[Cite as *Pavement Technology, Inc. v. Fugate*, 2013-Ohio-2916.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99224**

# PAVEMENT TECHNOLOGY, INC.

PLAINTIFF-APPELLANT

vs.

# RODNEY M. FUGATE, ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-778581

**BEFORE:** Jones, J., Stewart, A.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** July 3, 2013

**ATTORNEYS FOR APPELLANT**

Andrew M. Szilagyi
Kelly S. Lawrence
Frantz Ward, L.L.P.
2500 Key Center
127 Public Square
Cleveland, Ohio 4114


**ATTORNEYS FOR APPELLEES**

**For Rodney M. Fugate, et al.**

Jeffrey M. Silverstein
Jason P. Matthews
Jeffrey M. Silverstein & Assoc.
627 South Edwin C. Moses Blvd.
Suite 2-C
Dayton, Ohio 45417

**For Director, O.D.J.F.S.**

Mike DeWine
State Attorney General

BY:   Laurence R. Snyder
Assistant Attorney General
State Office Bldg., 11th Floor
615 West Superior Avenue
Cleveland, Ohio 44113

LARRY A. JONES, SR., J.:

{¶1} Plaintiff-appellant Pavement Technology, Inc. appeals the trial court's judgment affirming the decision of the Unemployment Compensation Review Commission finding that defendant-appellee Rodney Fugate was terminated from his employment with Pavement Technology without just cause. We affirm.

I. Procedural History

{¶2} In July 2011, Fugate filed an application for determination of unemployment benefits. In August 2011, the application was granted on the finding that Fugate was discharged from his employment with Pavement Technology without just cause. However, the review commission vacated the finding, finding instead that Fugate had been discharged with just cause. Fugate appealed the initial determination of benefits; the determination was affirmed by defendant-appellee, the Director, Ohio Department of Job and Family Services, Office of Unemployment Compensation.

{¶3} In September 2011, Fugate filed an appeal from the director's redetermination. The director transferred jurisdiction of the matter to the review commission, which held a hearing in October 2011. Fugate testified at the hearing as well as Pavement Technology's human resources and safety risk manager, Larry Maderia. The hearing officer affirmed the director's redetermination.

{¶4} Fugate filed a request for review, which was allowed. In December 2011, the review commission ordered that a new decision be issued. The decision was issued in February 2012, and it found that Fugate was discharged without just cause. Pavement Technology appealed the decision to the court of common pleas. The matter was

briefed, and in October 2012, the trial court issued its judgment affirming the review commission's determination that Fugate was discharged without just cause.

## II. Facts

{¶5} Fugate was employed by Pavement Technology as a laborer and driver. On Friday, July 1, 2011, while on duty and driving a Pavement Technology vehicle, Fugate was involved in two separate accidents. The first accident occurred at approximately 12:00 p.m. There were no reported injuries, but Fugate was cited for failure to use caution while changing lanes.

{¶6} The second accident occurred early in the 3:00 p.m. hour. Fugate was not cited and there were no reported injuries, but the vehicle that collided with the vehicle Fugate was driving was "totaled."

{¶7} Following the second accident, at approximately 3:19 p.m., Fugate called Maderia, Pavement Technology's safety and risk manager, to inform him of the accident. Maderia told Fugate to call the police, which Fugate did. Moments later, Fugate called Maderia back. According to Maderia, he told Fugate that after he finished with the police, he needed to get a drug screen at a specific facility located near Pavement Technology.

{¶8} The two spoke again at approximately 4:45 p.m. and, according to Maderia, he told Fugate that Fugate needed to follow-up with him after the drug screen. Maderia testified that the facility he referred Fugate to for the drug screen was the same facility where Fugate had taken his pre-employment drug screen. According to Maderia, after leaving the scene of the second accident, Fugate drove past the facility to park his vehicle

at Pavement Technology.

{¶9} Fugate's version of the events differed. According to Fugate, he was informed for the first time during the 4:45 p.m. conversation with Maderia, not the 3:19 p.m. conversation, that he needed to "immediately" take a drug screen. According to Fugate, Maderia did not direct him to any specific facility, because he "didn't care where [he] went," he just wanted him to "go take one."

{¶10} Fugate testified that he drove the vehicle to Pavement Technology, but did not pass the drug screening facility. At Pavement Technology, he called his boss (not Maderia) and told him his hours worked and gas used. He then drove in his own vehicle to the drug screening facility, but it was after 5:00 p.m. when he arrived and it was closed. Fugate testified that he was in a depressive and anxious state of mind so, he "just went home."

{¶11} Fugate testified that he went to Pavement Technology first, rather than the facility, because he was closer to Pavement Technology. He estimated that the two businesses are approximately one mile apart from each other. Fugate also thought that the drug screening facility was open until 7:00 p.m.

{¶12} Fugate contacted Maderia on Sunday, July 3, to find out what he should do. Fugate testified that he did not contact Maderia sooner because he had "other thoughts going through his mind" and "didn't even think about it."

{¶13} Pavement Technology terminated Fugate's employment on July 5, 2011. The company's "corrective action form" listed the following "incidents" or "infractions":

(1) carelessness, (2) damage to company property, (3) violation of company policies or procedures, and (4) insubordination. Maderia's statement of the incident was as follows:

> Rodney was involved in 2 accidents Friday July 1, 1 of which he was cited, the other he was not. Rodney lost the paperwork on the 2nd accident. He did not go for a post-accident drug screen when he was told to go immediately afterwards. Rodney didn't follow up w/ me on Friday [and] I didn't hear from him until Sunday afternoon.

{¶14} Fugate checked the box indicating he concurred with Maderia's statement and offered the following as his statement: "I would've taken [the drug test the] next business day [but the] place wasn't opened. But I did not contact for 2 days after accident."

{¶15} At the hearing, the hearing officer questioned Maderia about Fugate's termination as follows:

Q. And, what was the reason for Mr. Fugate's discharge?

A. Um, failure to go for * * * the required drug screen post accident.

Q. And, was that the sole reason that Mr. Fugate was discharged?

A. Yes, it's a refusal to go.

{¶16} Fugate testified at the hearing that when Maderia told him his employment with the company was terminated, Maderia offered several reasons why: (1) failure to take a drug test, (2) damage to company property, (3) insubordination, and (4) failure to follow procedures.

{¶17} Maderia testified that the company had a "supplemental" policy that applied

in these types of situations and that the policy "should have been attached with documentation [filed on] August 25th." The hearing officer stated that she did not have it in her file and noted that "not everything from ODJFS makes it back and forth between the Review Commission, or makes it to the Review Commission * * *." The hearing officer told Maderia that "so, you will have to tell me exactly what the policy is. * * * [Y]ou can testify to it. That's fine." Maderia testified that the supplemental policy provided as follows:

> Post accident testing will be conducted whenever an accident occurs as defined below. For purposes of this policy, an accident is considered an unplanned, unexpected, or unintended event that occurs on company property during the conduct of the company's business or during working hours, or which involves company supplied motor vehicles or motor vehicles that are used in conducting company business, or is within the scope of employment and which results in the following: * * * vehicular damage and non-vehicular damage.

{¶18} Maderia testified as follows regarding the time frame in which the testing was to be conducted, as set forth in the supplemental policy:

> [U]rine specimen collection for a drug test or breath saliva for an alcohol test is to occur immediately after a need has been determined. At no time shall a drug specimen be collected after 32 hours from the time of an * * * employee-related incident. Breath or saliva alcohol testing will be performed within two hours of the incident whenever possible but within eight hours, or it won't be performed but will be documented. * * * [A]ny failure to comply with the request for a specimen will result in termination of employment.

{¶19} Maderia testified that Fugate signed off acknowledging the supplemental policy on May 9, 2011, and that the policy had not changed since then. Fugate testified that he signed off on the supplemental policy, but never received a copy of it and was

unaware of its exact terms.

{¶20} Fugate testified that he was "aware that if you were caught using drugs that it's a zero tolerance policy. But [he] figured it didn't apply in this category because [he] never got a chance to take the test." Fugate further testified that "nobody give[sic] [him] a time period. Nobody discussed it with [him]. In [the] handbook, I figured I would be okay because, well, there is no listing anywhere in there other than for injuries."

{¶21} The employee handbook to which Fugate referred, which was part of the record, provided as follows relative to accidents:

> Any employee causing harm or injury to another employee, customer, customer's property, or any person or property in general through careless actions [is] required to submit to a drug test. A positive drug test can result in immediate termination. Refusal to submit to testing will be considered voluntary abandonment of the position and employment with PTI. If the test is positive, the employee may receive disciplinary action up to and including dismissal.
>
> * * *
>
> Employees are expected to drive safely at all times. In the event of a vehicle accident, the driver will be required to submit to a drug test. A positive drug test will result in immediate termination of employment.

{¶22} In the review commission's final decision, it found that there was no dispute that Maderia instructed Fugate at approximately 3:20 p.m. to "report to a specific location near the employer's place of business for the required drug test." The commission noted that Maderia testified that Fugate had 32 hours to take the test, but further noted that the "policy submitted by the employer states no specific timeframe for this drug test to be taken for a non-injury accident." The commission reasoned that because the "policy is

silent on this point, and the instruction to report for a drug test was given in the late afternoon on a Friday, it cannot be held that [Fugate's] belief [that he could take the test on the next business day] was unreasonable."

**{¶23}** In light of the above, the commission found that Fugate was terminated without just cause and, therefore, was entitled to unemployment compensation benefits. The trial court affirmed this final decision.

**{¶24}** Pavement Technology presents the following assignments of error for our review:

> I.   The Trial Court's decision to uphold the final determination by UCRC, which found that Fugate was discharged without just cause, is unreasonable and against the manifest weight of the evidence.
>
> II.   The Trial Court's decision to uphold the final determination by the UCRC, which found that Fugate is eligible for unemployment compensation benefits, is not in accordance with law.

### III.   Law and Analysis

**{¶25}** R.C. 4141.282(H) sets forth the standard of review for a decision made by the Unemployment Compensation Review Commission:

> If the court finds that the decision of the commission was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse, vacate, or modify the decision, or remand the matter to the commission.   Otherwise, the court shall affirm the decision of the commission.

This limited standard of review applies to all appellate courts.   *Irvine v. Unemp. Comp. Bd. of Rev.*, 19 Ohio St.3d 15, 18, 482 N.E.2d 587 (1985).   "[A] reviewing court may not reverse the commission's decision simply because 'reasonable minds might reach

different conclusions.'" *Williams v. Ohio Dept. of Job & Family Servs.*, 129 Ohio St.3d 332, 2011-Ohio- 2897, 951 N.E.2d 1031, ¶ 20, quoting *Irvine* at *id.*

{¶26} The Ohio Supreme Court has defined "just cause" as "'that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act.'" *Irvine* at 17, quoting *Peyton v. Sun T.V. & Appliances*, 44 Ohio App.2d 10, 12, 335 N.E.2d 751 (10th Dist. 1975). The determination of whether there is just cause for discharge depends upon the factual circumstances of each case. *Warrensville Hts. v. Jennings*, 58 Ohio St.3d 206, 207, 569 N.E.2d 489 (1991).

{¶27} Pavement Technology contends that there were two policies in effect at the time of Fugate's accidents: (1) the policy set forth in the employee handbook and (2) the supplemental policy, which Fugate acknowledged by signing in May 2011. The supplemental policy requires that an employee be drug tested "immediately," but no longer than 32 hours from the time of the incident, if he is involved in a motor vehicle accident resulting in vehicular damage or non-vehicular damage.

{¶28} According to Pavement Technology, it submitted the supplemental policy in its entirety, but because of a "mistake" on the part of the Ohio Department of Job and Family Services, the policy is not part of the record. But Pavement Technology contends that it is "of no consequence, as the policy was read verbatim, in relevant part, at the hearing, under oath." The company contends that the hearing officer explained that "reading the supplemental drug-free workplace policy into the record was sufficient to ensure that it is part of the administrative record. Consequently, the policy is, indeed,

part of the record evidence and, therefore, should have been acknowledged by the [Review Commission] in its final determination."

**{¶29}** In response, Fugate contends that the supplemental policy was "not made part of the record and Mr. Maderia conceded that he did not know whether [Fugate] ever received a copy of that policy." Fugate contends that he was only aware of the general policy, as stated in the employee handbook, which did not state a specific time frame in which he needed to be tested.

**{¶30}** The Ohio Department of Job and Family Services likewise contends that the supplemental policy is not in the record, and even after Fugate's request for review, Pavement Technology "submitted the very policy previously submitted by Mr. Fugate and relied upon by the Review Commission when it found that it contained no timeframe within which a drug test was to occur."

**{¶31}** The "best evidence rule" provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules * * *." Evid.R. 1002. The rule is premised on the notion that an original writing is more reliable, complete, and accurate as to its contents and meaning. *United States v. Holton*, 325 U.S. App. D.C. 360, 116 F.3d 1536, 1545 (C.A.D.C.1997). But the original is not required, and other evidence of the contents of a writing is admissible if: (1) all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; (2) the original is not obtainable; (3) the original is in possession of the opponent; or (4) the writing, recording, or

photograph is not closely related to a controlling issue.    Evid.R. 1004.

**{¶32}** Under Evid.R. 1003, "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

**{¶33}** No documentation of the supplemental policy — the original or a duplicate — is in the record.   We realize that the Rules of Evidence are relaxed in these type of administrative hearings, but we also recognize that Pavement Technology had a second opportunity, upon Fugate's request for review, to ensure that the supplemental policy was in the record, and failed to do so.   In light of this, we agree with Fugate and the Ohio Department of Job and Family Services that, for our purposes, the controlling policy was contained in the employee handbook.

**{¶34}** The policy in the employee handbook states that "[i]n the event of a vehicle accident, the driver will be required to submit to a drug test."   The policy does not state a specific time frame in which the test must be taken.   On this record, the review commission's decision was not unlawful, unreasonable, or against the manifest weight of the evidence.

**{¶35}** Pavement Technology further contends that in addition to failing to submit to a drug test, Fugate was terminated because he "willfully disregarded explicit instructions from a supervisor."   In its final decision, the review commission found that Fugate "thought he could simply take the test on the next business day.   As the policy is silent on this point, and the instruction to report for a drug test was given in the late

afternoon on a Friday, it cannot be held that [Fugate's] belief was unreasonable."

{¶36} Under our limited review, we do not find the review commission's decision unlawful, unreasonable, or against the manifest weight of the evidence.

{¶37} In light of the above, Pavement Technology's two assignments of error are overruled and the trial court's judgment is affirmed.

It is ordered that appellee recover of appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

LARRY A. JONES, SR., JUDGE

MELODY J. STEWART, A..J., CONCURS;
FRANK D. CELEBREZZE, JR., J., CONCURS
IN JUDGMENT ONLY